12 IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GAZORIA ROOFING LLC DBA DIVERSE ROOFING | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:23-CV-00036 |
| | § | |
| CAL-SOUTHWEST HOLDINGS LLC | § | |

**TEX-CAL PROPERTIES LLC'S VERIFIED COMPLAINT IN INTERVENTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Intervenor Tex-Cal Properties LLC files this complaint in intervention as a party-defendant as authorized by Federal Rule of Civil Procedure 24.

## A. PARTIES

1. Intervenor is a limited liability company whose members Joseph and Pamela Foley, are citizens of California.

2. Plaintiff Gazoria Roofing LLC DBA Diverse Roofing is a limited liability company, whose members are Citizens of Texas.

3. Defendant Cal-Southwest Holdings LLC is a limited liability company whose members are also Joseph and Pamela Foley, citizens of California.

## B. ORIGINAL LAWSUIT

4. Plaintiff Gazoria Roofing LLC DBA Diverse Roofing sued Defendant for breach of contract for allegedly failing to have paid for unnamed materials. Another cause of action stated is for an "Action to enforce payment per Chapter 28 of the Texas Property Code", which again alleges vaguely that there were materials which Plaintiff supplied to Defendant for which Defendant did not pay. In a third cause of action, Plaintiff seeks recovery of an unquantified amount based on a Quantum Meruit

theory based on the same vaguely alleged facts. Additionally, Plaintiff requested interpleader of some $179,933.50 to be deposited into the Court's registry and asks the court to determine which of the parties it identified was entitled to those funds, without identifying any of the parties that are allegedly competing for these funds or the nature of their claims.

5. Defendant responded and in a Verified First Amended Answer and Counterclaim, stated a general denial, and asserted affirmative defenses of fraud and unclean hands, as well as asserting three counterclaims. Defendant stated that it was not, in fact, the owner of the building on which the roofing materials allegedly supplied by Plaintiff were to be installed, but that intervenor was. As additional facts, Defendant asserted that, although Intervenor and Defendant have common ownership and management, it was intervenor, not Defendant, that had the capacity to contract regarding the building and did so. It stated that Defendant's role in the transaction was solely that it had written two checks to Defendant on behalf of Intervenor. These checks were to satisfy some of the obligations that Intervenor had under the terms of the contract into which it had entered with Plaintiff. Defendant's counterclaims were for fraud and conversion by Plaintiff regarding two checks it had written. One cause of action was for common law fraud in relation to a $300,000 joint check payable to Plaintiff and Duro-Last Inc. on behalf of Intervenor, alleging that Plaintiff had induced Defendant to write the check based a false representation, made verbally and in the contract. This misrepresentation was that it intended to only endorse the check and then forward it to the roofing materials manufacturer, to be cashed and held on account by them. A second cause of action was for conversion of the funds from the $300,000 joint check by the Plaintiff from its represented and agreed upon use to the Plaintiff's own purposes. The third cause of action was for common law fraud in relation to an additional check for $38,250 which Defendant had written on behalf of Intervenor, the writing and sending of which check Plaintiff had also induced by its false representations.

**INTERVENOR'S CLAIMS AGAINST PLAINTIFF**
**FIRST CAUSE OF ACTION-BREACH OF WRITTEN CONTRACT**
**AGAINST GAZORIA ROOFING DBA DIVERSE ROOFING**

6. On dates from 12/13/21 to 12/20/21, Intervenor and Plaintiff, by email and phone, with written documents exchanged by email and mail, entered a multi-part written contract. The contract was for a roof improvement at a warehouse building at 2705 Quality Lane in Brownsville, Texas. By the terms of the contract, Plaintiff was to install a vinyl rubber covering with specified insulation and fill material under it, as well as to provide new gutters. A part of the contract entitled "Agreement Regarding Prepaid Materials for Duro-last Products at 2705 Quality Lane, Brownsville, Texas" ("A.1") provided that a check was to be sent for $300,000.00. This was to be made payable jointly to Plaintiff and to Duro-Last, the roofing materials manufacturer. The check was to be mailed first to Plaintiff to endorse and then sent on to Duro-Last. The funds were then to be held in a Duro-Last account to be progressively drawn down by them for payment for roofing materials. This Agreement Regarding Prepaid Materials was supplemented by an "Authorization to Issue Joint Check(s)" ("A.1.a") which was executed by Plaintiff and Intervenor, with a space for Duro-Last's signature on it. It specified the terms under which Duro-Last was to be holding the funds. Plaintiff had represented to Intervenor that the wording had been approved by Duro-Last. This Agreement Regarding Prepaid Materials was to be forwarded to Duro-Last along with the $300,000 check. An additional part of the contract was an "AIA Document A105-2017-Standard Short Form Agreement Between Owner and Contractor"("A.2") supplemented by an "AIA Contractor's Application for Payment ("A.2.a") with a "Continuation Sheet" ("A.2.b.") also referred to as a "Schedule of Values" at §3.2 in the AIA Document A105-2017, and a "Revised Roof Proposal (Contract Exhibit)("A.2.c") which specified some additional terms. These parts of the contract taken together, provided for essential terms of the contract as follows: (1) The price was to be $1,025,000 which included all labor and materials; (2)

This was to be paid starting with two checks to be paid immediately. one being the $300,000 joint check. The other check was to be for $38,250, which was to be an advance payment for aspects of the roof that could begin before receipt of materials from Duro-Last and was to have begun, and this was to start "on or about the week of December 20, 2021". (3) Additional payments were to be made as the work progressed. (4) Specifications were set forth; (5) A 25-year manufacturer's warranty was to be provided upon completion.

7.      Intervenor mailed the two checks for $338,250 to Plaintiff and otherwise has done all that was required of it under the contract.

8.      Plaintiff breached the contract by failing to begin the work on or about the week of December 20,2021 or ever, and by June 20, 2022, was denying that the contract had ever existed. It also breached the contract by, on or about December 23, 2021, depositing the joint check into its own account, without Duro-Last's participation or endorsement.

9.      Intervenor has made repeated demands on Plaintiff to specifically perform the contract and to return the converted funds.  Plaintiff has refused.

10.     Intervenor was harmed by Plaintiff's breach, in that it has had to pay, or cause Defendant to pay, for all materials except for $68,346.60. That amount was sent to Duro-Last under duress after Intervenor had discovered Plaintiff's conversion of the $300,000 check. And Intervenor has also had to pay other companies for the labor involved in the installation of the materials that Plaintiff was obligated to have installed under the contract. The job is still ongoing, and a final figure can be provided when it is completed, but it is estimated that the final cost will be more than $600,000 above the $1,025,000 contract price. This figure is exclusive of the still unreturned $231, 653.40 portion of the $300,000.00 check, and the $38,250.00 from the second check. Thus, Intervenor has been damaged in an amount believed to exceed $860,000.00, to be further specified by proof at trial.

11. Intervenor has retained counsel, who has presented this claim to Plaintiff, and if Plaintiff does not tender the amount owed within 30 days after claim was presented, Intervenor will be entitled to recover and necessary attorney's fees under the provisions of Texas Civil Practice and Remedies Code chapter 38.

12. For these reasons, Intervenor asks the Court that the Intervenor be awarded a judgment for breach of contract as follows:

a. Actual damages in an amount to be specifically calculated after the roof. work is finished and is now estimated to exceed $860,000.00.

b. Prejudgment and postjudgment interest.

c. Court costs.

d. Attorney's fees.

e. All other relief to which Intervenor is entitled.

**SECOND CAUSE OF ACTION-COMMON LAW FRAUD-INTENTIONAL MISREPRESENTATION-FRAUDULENT INDUCEMENT AGAINST GAZORIA ROOFING DBA DIVERSE ROOFING**

13. Plaintiff's representations that it intended to forward the joint check to Duro-Last after only endorsing it, and otherwise honor the contract by proceeding with the roof project were false.

14. That these representations were false when they were made is evident from the fact that Plaintiff was, by the terms of the agreement, was to undertake certain actions immediately upon receipt of the two checks, but these actions not undertaken.

15. Plaintiff made these representations to induce Intervenor to enter the contract and have the two checks sent.

16. Intervenor's reliance on Plaintiff's representations was reasonable in that Plaintiff held itself out to be in the regular practice of performing the kind of roofing project for which it was contracting.

Moreover, the action of the bank in allowing Plaintiff to unilaterally cash the joint check was contrary to banking rules contained in TCC 3.100 (a) and (d) and Plaintiff's actions in converting the funds was proscribed by criminal law (TPC 31.03). Intervenor could not have reasonably anticipated that these violations of commercial and criminal codes would occur.

17.     Intervenor's reliance on the misrepresentation caused it injury, in that it did not receive the benefit of the bargain made with Plaintiff, and instead had to pay a greater price for all the materials and labor that Plaintiff had agreed to supply, while also not having $231,653.40 of the funds from the $300,000.00 check returned and having none of the funds from the $38,250 check returned.

18.     For these reasons, Intervenor asks the Court that the Intervenor be awarded a judgment for fraud as follows:

  a.     Actual damages in an amount to be specifically proven at trial, but estimated to exceed $860,000.

  b.     Prejudgment and postjudgment interest.

  c.     Court costs.

  d.     Attorney's fees.

  e.     All other relief to which Intervenor is entitled.

**THIRD CAUSE OF ACTION FOR PERSONAL LIABILITY FOR PLAINTIFF'S BREACH OF CONTRACT AGAINST GILBERT GAZORIZA**

19.     Paragraphs 1 through 18 are incorporated herein and made a part hereof by reference.

20.     All fraudulent acts related to the contract were done by Gilbert Gazoria as a member of Plaintiff.

21.     These acts were done with dishonesty of purpose and intent to deceive.

22.     These fraudulent acts were done by Gilbert Gazoria for his own direct personal benefit.

23. Because Gilbert Gazoria's acts constituted actual fraud perpetrated by Gazoria for his own personal benefit, he is not protected from personal liability per the provisions of Article 2.21 of the Texas Business Corporations Act and is personally liable to Intervenor for Plaintiff's breach of contract.

24. For these reasons, Intervenor asks the Court that the Intervenor be awarded a judgment for breach of contract against Gilbert Gazoria as following:

a. Actual damages in an amount to be specifically proven at trial but estimated to exceed $860,000.00.

b. Pre-Judgment and Post-Judgement Interest

c. Court costs.

d. Attorney's fees.

e. All other relief to which Intervenor is entitled.

**FOURTH CAUSE OF ACTION FOR PERSONAL LIABILITY FOR PLAINTIFF'S COMMON LAW FRAUD-INTENTIONAL MISREPRESENTATION- FRAUDULENT INDUCEMENT AGAINST GILBERT GAZORIA**

25. Paragraphs 1 through 25 are incorporated herein and made a part hereof by reference.

26. All fraudulent misrepresentations to induce Intervenor to enter the contract and cause the $338,250.00 to be sent to it were made by Gilbert Gazoria as a member of Plaintiff.

27. These representations were done with dishonesty of purpose and intent to deceive.

28. These fraudulent misrepresentations were made by Gilbert Gazoria for his own direct personal benefit.

29. Because Gilbert Gazoria's acts constituted actual fraud perpetrated by him for his own personal benefit, he is not protected from personal liability for Plaintiff's breach of contract per the provisions of Article 2.21 of the Texas Business Corporations Act and is personally liable for Plaintiff's Common Law Fraud/Intentional Misrepresentation-Fraud in the Inducement.

30.    For these reasons, Intervenor asks the Court that the Intervenor be awarded a judgment for

Common Law Fraud-intentional Misrepresentation-Fraud in the Inducement against Gilbert Gazoria

as following:

a.    Actual damages in an amount to be specifically proven at trial but estimated to exceed $860,000.00.

b.    Court costs.

c.    Punitive and exemplary damages.

d.    All other relief to which intervenor is entitled.

Respectfully submitted,

**McCULLOUGH & McCULLOUGH**

By: /S/GENE MCCULLOUGH
Gene McCullough
Texas Bar No. 00794267
Federal I. D. No. 19292
P.O. Box 2244
323 East Jackson Street
Harlingen, Texas 78551-2244
gene@gmcculloughlaw.com
Tel. (956) 423-1234
Fax. (956) 423-4976
ATTORNEY FOR INTERVENOR,
TEX-CAL PROPERTIES, LLC

CERTIFICATE OF SERVICE

I certify that on the 12th day of April, 2023, a true and correct copy of *Tex-Cal Properties LLC's Verified Complaint in Intervention* was served to each person listed below by the method indicated.

VIA EMAIL: elucio@hamiltonlucio.com
Erick L. Lucio
Hamilton & Lucio, P.C.
805 Old Port Isabel Road
Brownsville, Texas 78521

/S/GENE MCCULLOUGH
Gene McCullough

VERIFICATION

My name is Joseph Foley. I am capable of making the verification. I have read Tex-Cal Properties Motion to Intervene and Verified Memorandum of Points and Authorities in Support Thereof. The facts stated in in are within my knowledge and are true and correct.

Joseph Foley

Sworn to and subscribed before me by Joseph Foley on ____________________ 2023

See attached Jurat Notary Form
04/04/2023

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Riverside } SS.

Subscribed and sworn to (or affirmed) before me on this 4th day of April, 2023, by Charles Joseph Foley, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

ROCHEL AMOG
COMM. # 2348140
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
MY COMM. EXPIRES MAR. 17, 2025

NOTARY SIGNATURE

PLACE NOTARY SEAL IN ABOVE SPACE

## OPTIONAL INFORMATION

The information below is optional. However, it may prove valuable and could prevent fraudulent attachment of this form to an unauthorized document.

**CAPACITY CLAIMED BY SIGNER (PRINCIPAL)**

- [x] INDIVIDUAL
- [ ] CORPORATE OFFICER
- [ ] PARTNER(S)
- [ ] ATTORNEY-IN-FACT
- [ ] TRUSTEE(S)
- [ ] GUARDIAN/CONSERVATOR
- [ ] OTHER

**DESCRIPTION OF ATTACHED DOCUMENT**

Verification
TITLE OR TYPE OF DOCUMENT

1
NUMBER OF PAGES

04/04/2023
DATE OF DOCUMENT

OTHER

**ABSENT SIGNER (PRINCIPAL) IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

RIGHT THUMBPRINT OF SIGNER